## IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**February 8, 2024**
C. CASEY FORBES, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**CENTRE FOUNDRY & MACHINE COMPANY,**
**Employer Below, Petitioner**

**vs.) No. 23-ICA-481**        (JCN: 2021015939)

**NEAL BLEDSOE,**
**Claimant Below, Respondent**

### MEMORANDUM DECISION

Petitioner Centre Foundry & Machine Company ("CFMC") appeals the October 19, 2023, order of the Workers' Compensation Board of Review ("Board"). Respondent Neal Bledsoe timely filed a response. [1] CFMC did not file a reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order, which granted Mr. Bledsoe a 7% permanent partial disability ("PPD") award, and instead granting him a 14% PPD award.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On February 3, 2021, Mr. Bledsoe injured his left shoulder while "throwing slag" at work. Mr. Bledsoe sought treatment at Wheeling Hospital Urgent Care, complaining of pain and decreased range of motion in his left shoulder. X-rays revealed degenerative osteoarthrosis and no acute findings. The records indicated that Mr. Bledsoe likely had a rotator cuff injury and that he was instructed to follow up with an orthopedic surgeon. On February 10, 2021, the claim administrator held the claim compensable for a left shoulder sprain.

Mr. Bledsoe underwent an MRI of the left shoulder without contrast on February 12, 2021, which revealed focal tendinitis versus partial tearing of the supraspinatus near its femoral attachment, moderate acromioclavicular joint degenerative changes, and subacromial subdeltoid bursitis. Subsequently, on March 12, 2021, Jeffrey Abbott, D.O.,

---

[1] CFMC is represented by Steven K. Wellman, Esq., and James W. Heslep, Esq. Mr. Bledsoe is represented by Sandra K. Law, Esq.

1

diagnosed Mr. Bledsoe with a tear of the left rotator cuff, osteoarthritis of the left acromioclavicular joint, and subacromial impingement of the left shoulder.

After an unsuccessful course of physical therapy, Mr. Bledsoe underwent a left shoulder arthroscopy with labral debridement and synovectomy and open left rotator cuff tear with subacromial decompression and distal clavicle excision on July 12, 2021. The postoperative diagnosis was left rotator cuff tear, left shoulder subacromial impingement, left shoulder acromioclavicular degenerative joint disease, degenerative anterior labral tear, synovitis, and degenerative joint disease grade 2 involving the glenoid.

Mr. Bledsoe continued to complain of pain and limited range of motion in his left shoulder. On February 12, 2022, Mr. Bledsoe underwent a second MRI of his left shoulder, which revealed interval postsurgical change to the rotator cuff with progression of tendinopathy and suspected mild bursal surface tearing versus postsurgical change. Small areas of linear full thickness tearing were not excluded. The report indicated that the evaluation was limited by motion artifact.

On March 9, 2022, Mr. Bledsoe underwent an independent medical evaluation ("IME") performed by orthopedic surgeon Kelly Agnew, M.D. Dr. Agnew determined that Mr. Bledsoe had reached maximum medical improvement ("MMI") and noted that his complaints were "far out of proportion to the surgery performed and to . . . his vigorous muscular appearance." Using the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) ("the *Guides*"), found 11% upper extremity impairment ("UEI") for range of motion abnormalities and 10% UEI for the distal clavicle resection surgery. Dr. Agnew added these ratings to a total of 21% UEI, which converted to 13% whole person impairment ("WPI"). In a later-issued addendum, Dr. Agnew noted that he had added the UEI for range of motion abnormalities and the distal clavicle resection instead of combining the values. In correcting his calculations, Dr. Agnew noted that Mr. Bledsoe had 20% UEI, which converted to 12% WPI. Dr. Agnew then apportioned 5% WPI to preexisting degenerative conditions, opining that the distal clavicle resection would have no relation to the work-related injury. In sum, Dr. Agnew assessed 7% WPI attributable to the compensable injury. By order dated May 25, 2022, the claim administrator granted Mr. Bledsoe a 7% PPD award in accordance with Dr. Agnew's recommendation. Mr. Bledsoe protested the order to the Board.

Mr. Bledsoe underwent an IME performed by Bruce Guberman, M.D., on June 28, 2022. Dr. Guberman found Mr. Bledsoe to be at MMI but noted that "it would still be desirable to have a second opinion from a shoulder specialist." However, because a second opinion was neither authorized nor planned, Dr. Guberman assessed Mr. Bledsoe's permanent impairment using the *Guides*. Dr. Guberman assessed 17% UEI for range of motion abnormalities and 10% UEI for the distal clavicle resection, which he combined for a total of 25% UEI. Because Mr. Bledsoe had preexisting degenerative changes in his left shoulder and because he had a 2% UEI for range of motion abnormalities in the uninjured

right shoulder, Dr. Guberman apportioned 2% UEI for the left shoulder, leaving a net of 23% UEI. Dr. Guberman then converted the 23% UEI to 14% WPI, which was his final recommendation. In reviewing Dr. Agnew's report, Dr. Guberman noted that they had reached similar impairment ratings, but that Dr. Agnew had apportioned for preexisting conditions. Dr. Guberman disagreed with the decision to apportion, stating that the surgery for the distal clavicle was performed solely as a result of the compensable injury and that Mr. Bledsoe had no prior symptomology. According to Dr. Guberman, the impairment assigned to the clavicle resection was for the surgery itself, not any degenerative changes.

Mr. Bledsoe underwent a functional capacity evaluation on July 5, 2022. According to the report, Mr. Bledsoe was unable to complete validity testing and, therefore, an accurate assessment of his capabilities could not be made.

On April 20, 2023, Mr. Bledsoe underwent an IME performed by Christopher Martin, M.D. Dr. Martin found Mr. Bledsoe to be at MMI and, using the *Guides*, assessed Mr. Bledsoe's permanent impairment. Dr. Martin opined that Mr. Bledsoe's range of motion measurements were inconsistent and, therefore, should not be used as the basis of his impairment rating. Accordingly, Dr. Martin did not provide any impairment rating based on range of motion. Regarding impairment for the distal clavicle resection, Dr. Martin opined that Dr. Guberman failed to provide any justification for why an additional clavicle impairment should have been combined with range of motion impairment as, per the *Guides*, "impairments from the disorders in this section are usually estimated by using other criteria. The criteria described in this section should only be used when the other criteria have not adequately encompassed the extent of the impairments." According to Dr. Martin, Mr. Bledsoe's "acromioclavicular abnormalities are entirely degenerative pre-existing age-related findings" and had no relation to the compensable injury. Given the foregoing, Dr. Martin opined that no impairment other than range of motion impairment would be appropriate in this case. Because Dr. Martin found no range of motion impairment, he assessed 0% impairment related to Mr. Bledsoe's injury.

In response to Dr. Martin's report, Dr. Guberman authored an addendum dated June 27, 2023. Dr. Guberman opined that, contrary to Dr. Martin's claims, he was able to obtain entirely valid range of motion measurements of Mr. Bledsoe's left shoulder. Dr. Guberman also "strongly disagreed" with Dr. Martin's opinion that the distal clavicle resection had nothing to do with the compensable injury. Dr. Guberman noted that there was no history or evidence of any prior symptoms or injuries in the left shoulder and stated, "it goes without saying that [Mr. Bledsoe] would not have undergone the surgery that was performed . . . if it were not for the [compensable] injury." While the presence of preexisting degenerative changes made it more likely that Mr. Bledsoe would need the resection of the distal clavicle following the injury, Dr. Guberman opined that "the resection of the distal clavicle would not, in any way, shape or form, have been required had it not been for the [compensable] injury." Dr. Guberman opined that, per the *Guides*,

a 10% impairment rating for the resection of the distal clavicle resection surgery, not the preexisting degenerative changes, was appropriate.

By order dated October 19, 2023, the Board reversed the claim administrator's order granting Mr. Bledsoe a 7% PPD award and, instead, granted him a 14% PPD award in accordance with Dr. Guberman's report. After summarizing the reports of Drs. Agnew, Guberman, and Martin, the Board found that Dr. Martin's report was unpersuasive as he found no ratable WPI for the compensable injury. Turning to the reports of Drs. Agnew and Guberman, the Board found that the main difference in their opinions was apportionment for preexisting impairment. Citing to this Court's holdings in *Duff v. Kanawha County Commission*, 247 W. Va. 550, 882 S.E.2d 916 (Ct. App. 2022), the Board determined that Dr. Agnew inappropriately apportioned the entirety of Mr. Bledsoe's impairment from the distal clavicle resection to preexisting degenerative changes. The Board found that there was no evidence of any prior treatment, symptoms, range of motion abnormalities, or diagnoses regarding Mr. Bledsoe's left shoulder. As such, the Board concluded that Dr. Agnew's decision to apportion the entirety of the impairment related to the distal clavicle resection was unpersuasive. In contrast, Dr. Guberman noted evidence of preexisting degenerative changes in Mr. Bledsoe's left shoulder but, rather than apportioning the entirety of his impairment to preexisting conditions, Dr. Guberman evaluated Mr. Bledsoe's uninjured right shoulder and found 2% UEI. Dr. Guberman then reasoned that this 2% UEI in the right shoulder was likely due to preexisting degenerative changes and, therefore, deducted that amount from Mr. Bledsoe's left UEI rating. The Board found that Dr. Guberman's method was more consistent with the opinions of the Supreme Court of Appeals of West Virginia ("SCAWV") and this Court, and found his report to be the most persuasive.

The Board also addressed the employer's argument that Dr. Guberman erred in combining impairment for range of motion abnormalities with impairment for a distal clavicle resection arthroplasty. The Board cited the SCAWV's decision in *Davis v. West Virginia Office of the Insurance Commissioner*, No. 11-0687, 2013 WL 466419 (W. Va. Feb. 7, 2013) (memorandum decision), to find that Dr. Guberman did not err in combining these ratings. In *Davis*, the issue was nearly identical to the issue in the case at bar in that, Dr. Martin alleged that Dr. Guberman had incorrectly assigned impairment for both a left shoulder distal clavicle resection arthroplasty and left shoulder range of motion deficits. *Id.* at *2. However, in *Davis*, the Board adopted Dr. Martin's opinion and found Dr. Guberman's ratings to be duplicative. *Id.* The SCAWV reversed the Board's order and found that, per the *Guides*, "Dr. Guberman's evaluation is the best evidence of record of Mr. Davis's whole person impairment resulting from the compensable injury." *Id.* Given the circumstances in *Davis*, the Board found that, in the instant case, the employer's assertion that Dr. Guberman erred in combining the two ratings was unpersuasive. Accordingly, the Board reversed the claim administrator's order and granted Mr. Bledsoe a 14% PPD award in accordance with Dr. Guberman's recommendation. CFMC now appeals.

4

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, 555, 882 S.E.2d 916, 921 (Ct. App. 2022).

On appeal, CFMC argues that the Board erred in awarding Mr. Bledsoe a PPD award in accordance with Dr. Guberman's recommendation. CFMC argues that both Dr. Agnew and Dr. Martin agreed that impairment for the distal clavicle resection was not appropriate as it was not causally related to the compensable injury. According to CFMC, Dr. Guberman also inappropriately assigned impairment for both the resection and range of motion, and contends that the *Guides* provide that impairment for the resection should only be used when other rating criteria have not adequately encompassed the extent of the impairment. CFMC claims that, in addition to inappropriately rating the distal clavicle resection, Dr. Guberman seemingly ignored inconsistencies between Mr. Bledsoe's subjective complaints and his physical appearance and/or performance during examinations. CFMC argues that the Board of Review was clearly wrong in failing to consider the evidence of invalidity or consider that Dr. Guberman's findings were unreliable. CFMC concludes that a clear preponderance of the evidence indicates that Mr. Bledsoe suffers from no more than 7% permanent impairment and that the Board erred in allowing an award for impairment that was based upon a preexisting, unrelated condition, and rewarded Mr. Bledsoe for giving invalid effort.

As the SCAWV has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential

standard of review in mind, we cannot conclude that the Board was clearly wrong in reversing the claim administrator's order and granting Mr. Bledsoe a 14% PPD award in accordance with Dr. Guberman's recommendation.

The Board correctly found that the issues raised by CFMC in the instant case mirrored the issue raised in *Davis*.[2] In *Davis*, the SCAWV acknowledged the argument that Dr. Guberman improperly assigned impairment based on an arthroplasty and range of motion limitations. The SCAWV, however, found that the section in the *Guides* covering arthroplasty procedures (which include a distal clavicle resection) specifically states that "[i]n the presence of decreased motion, motion impairments are derived separately (Sections 3.1f through 3.1j) and *combined* with arthroplasty impairment using the Combined Values Chart (p. 322)." *Davis*, 2013 WL 466419, at \*2. (Emphasis in original). In looking at the relevant statutory provisions and the *Guides*, the SCAWV found that Dr. Guberman's evaluation, which included impairment ratings for both an arthroplasty and range of motion abnormalities, was the best evidence of the claimant's whole person impairment. *Id.* Accordingly, we are not persuaded by CFMC's argument that the Board erred in relying on Dr. Guberman's report when he included impairment ratings for both the distal clavicle resection and range of motion abnormalities.

We likewise are not persuaded by CFMC's argument that the Board erred in relying on Dr. Guberman's report when he did not apportion for preexisting conditions. As we noted in *Duff*, West Virginia Code § 23-4-9b (2003) requires, in part, that:

> Where an employee has a *definitely ascertainable impairment* resulting from an occupational or a nonoccupational injury, disease, or any other cause, whether or not disabling, and the employee thereafter receives an injury in the course of and resulting from his or her employment, unless the subsequent injury results in total permanent disability within the meaning of section one [§ 23-3-1], article three of this chapter, *the prior injury, and the effect of the prior injury, and an aggravation, shall not be taken into consideration in fixing the amount of compensation* allowed by reason of the subsequent injury.

(Emphasis added). In *Duff*, we explained that "'definitely ascertainable' and 'definitely ascertained' refer to the existence of a preexisting condition, and not to the precise degree of impairment to be apportioned." 247 W. Va. at 556, 882 S.E.2d at 922. Accordingly, after determining whether a "definitely ascertainable impairment" exists, the Board must then determine the degree of impairment to be apportioned. West Virginia Code § 23-4-9b provides that "[t]he degree of the preexisting impairment may be established at any time by competent medical or other evidence."

---

[2] Coincidentally, CFMC was also the employer in *Davis*.

Here, the Board thoroughly analyzed Mr. Bledsoe's case under our holding in *Duff* and found that, while apportionment was necessary, Dr. Agnew's decision to apportion the entirety of Mr. Bledsoe's impairment from his distal clavicle resection was not persuasive. The Board noted that there was no evidence of any treatment, symptoms, range of motion abnormalities, or diagnoses with regard to Mr. Bledsoe's left shoulder prior to the injury. Given this lack of evidence, the Board concluded that apportioning all of Mr. Bledsoe's impairment to preexisting conditions was simply not proper. The Board found that, in contrast, Dr. Guberman's method of apportioning the amount of impairment in Mr. Bledsoe's uninjured right shoulder, which likely demonstrated degenerative changes, was more consistent with both the holdings of the SCAWV and this Court. Upon our review, we cannot conclude that the Board was clearly wrong in finding Dr. Guberman's report more persuasive in this regard. The evidence demonstrates that Dr. Guberman's decision to apportion 2% WPI to degenerative changes was more persuasive and credible than Dr. Agnew's apportionment.

Lastly, although CFMC argues that the Board erred in not affirming the claim administrator's granting Mr. Bledsoe a PPD award in accordance with Dr. Agnew's report given the evidence of Mr. Bledsoe's invalid attempts during physical examinations, we conclude that this was a credibility issue solely within the discretion of the Board. The Board was presented with the evidence of Mr. Bledsoe's alleged inconsistencies, yet ultimately decided that Dr. Guberman's report was the most persuasive. We find no clear error in this decision and will defer to the Board's determinations of credibility. *See Martin v. Randolph Cnty. Bd. of Educ.*, 195 W. Va. 297, 306, 465 S.E.2d 399, 408 (1995) ("We cannot overlook the role that credibility places in factual determinations, a matter reserved exclusively for the trier of fact. We must defer to the ALJ's credibility determinations and inferences from the evidence . . . .").

Accordingly, we affirm the Board's October 19, 2023, order reversing the claim administrator's order and granting Mr. Bledsoe a 14% PPD award in accordance with Dr. Guberman's report.

Affirmed.

**ISSUED:** February 8, 2024

**CONCURRED IN BY:**

Judge Charles O. Lorensen
Judge Daniel W. Greear

Chief Judge Thomas E. Scarr, not participating

7